# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 13, 2008          Decided July 1, 2008

No. 07-5114

CHARLES DANIELS AND
BROTHERHOOD OF LOCOMOTIVE ENGINEERS
AND TRAINMEN, CENTRAL REGION,
APPELLANTS

v.

UNION PACIFIC RAILROAD COMPANY *ET AL.*,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 06cv00939)

———

*Thomas Geoghegan* argued the cause for the appellants. *Edgar James* was on brief.

*Marian L. Borum*, Assistant United States Attorney, argued the cause for the federal appellees. *Jeffrey A. Taylor*, United States Attorney, and *Michael J. Ryan*, Assistant United States Attorney, were on brief. *R. Craig Lawrence*, Assistant United States Attorney, entered an appearance.

*Donald J. Munro* argued the cause for appellee Union Pacific Railroad Company. *Henry N. Carnaby* and *Jeffrey D. Fox* entered appearances.

2

Before: HENDERSON, ROGERS and BROWN, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.[*]

KAREN LeCRAFT HENDERSON, *Circuit Judge*: Appellants Charles Daniels and the Brotherhood of Locomotive Engineers and Trainmen (BLET) appeal the district court's dismissal of their complaint against the Federal Railroad Administration (FRA), the Locomotive Engineer Review Board (LERB) and the Union Pacific Railroad Company (Union Pacific). *See Daniels v. Union Pac. R.R.*, 480 F. Supp. 2d 191 (D.D.C. 2007). Daniels and the BLET allege that the defendants violated the Due Process Clause of the Fifth Amendment by demoting Daniels and six other locomotive engineers from Class I locomotive engineers to Class III student engineers without a hearing.[1] The district court dismissed the claims for failure to exhaust administrative remedies and, alternatively, for lack of subject matter jurisdiction. For the reasons that follow, we affirm the dismissal for lack of subject matter jurisdiction.

**I.**

Pursuant to authority delegated by the Secretary of the United States Department of Transportation (Secretary) acting under The Rail Safety Improvement Act of 1988, Pub. L. No. 100-342 § 4, 102 Stat. 624 (1988) (recodified at 49 U.S.C. § 20135), in 1991 the FRA adopted a certification program for

---

[*]*Circuit Judge* BROWN concurs in the opinion of the Court except as to footnotes 8, 9 and 13.

[1]The BLET "represents not only plaintiff Daniels but [the six] other engineers named [in the complaint] who have lost their Class I licenses without a hearing or other due process." First Am. Compl. ¶ 5.

locomotive engineers.[2]  *See* Qualifications for Locomotive Engineers, 56 Fed. Reg. 28,228 (1991) (codified at 49 C.F.R. pt. 240).  Although the FRA does not test or certify engineers itself, its regulations require each railroad to adopt training and certification programs that meet minimum requirements, *see, e.g.*, 49 C.F.R. §§ 240.1, 240.101, and, regardless of differences among the individual railroads' programs, all railroads must "employ standard methods for identifying qualified locomotive engineers and monitoring their performance," 56 Fed. Reg. at 28,228, including procedures governing certification and revocation of certificates, *see, e.g.*, 49 C.F.R. §§ 240.211, 240.219, 240.117, 240.307.  For example, before certifying (or recertifying) a locomotive engineer, a railroad must "determine that the person has demonstrated . . . the skills to safely operate locomotives or locomotives and trains, including the proper application of the railroad's rules and practices for the safe operation of locomotives or trains, in the most demanding class or type of service that the person will be permitted to perform." *Id.* § 240.211(a).   If a prospective engineer is denied certification (or recertification in the case of a certified engineer), the "railroad shall notify [the] candidate for certification or recertification of information known to the railroad that forms the basis for denying the person certification and provide the person a reasonable opportunity to explain or rebut that adverse information in writing prior to denying certification." *Id.* § 240.219(a).  Once certified, an engineer must undergo periodic retesting and "[a] certified engineer who has demonstrated a failure to comply . . . with railroad rules and practices for the safe operation of trains shall have his or her certification revoked." *Id.* § 240.117(c)(1).  Before *revoking* an engineer's certification, the railroad must "provide notice of the reason for the suspension, the pending revocation, and an

---

[2]The FRA's delegated authority is set forth in 49 C.F.R. § 1.49(m).

opportunity for a hearing before a presiding officer other than the investigating officer." *Id.* § 240.307(b).

The FRA reviews the railroad's decision to deny certification/recertification or to revoke a certification. *See* 49 C.F.R. § 240.401(a). The FRA "has delegated initial responsibility for adjudicating such disputes to the Locomotive Engineer Review Board." *Id*. § 240.401(b). "If adversely affected by the Locomotive Engineer Review Board decision, either the petitioner before the Board or the railroad involved shall have a right to an administrative proceeding [before an FRA Administrative Hearing Officer]." *Id*. §§ 240.407(a), 240.409. The Administrative Hearing Officer (AHO) hearing is "a de novo hearing to find the relevant facts and determine the correct application of [49 C.F.R. Part 240] to those facts." *Id*. § 240.409(c). "Any party aggrieved by the [AHO's] decision may file an appeal [with the FRA Administrator]." *Id*. § 240.411(a). "The Administrator may remand, vacate, affirm, reverse, alter or modify the decision of the presiding officer and the Administrator's decision constitutes final agency action except where the terms of the Administrator's decision (for example, remanding a case to the presiding officer) show that the parties' administrative remedies have not been exhausted." *Id*. § 240.411(e).

Daniels was hired by Union Pacific in August 1998. On July 14, 1999, his "Class I certificate" to operate a locomotive became effective but two months later, on September 3, 1999, Union Pacific required Daniels to undergo additional evaluation. After receiving low scores on the re-evaluation, on September 8, 1999, Daniels was demoted from a Class I engineer to a Class III student engineer. Union Pacific did not provide Daniels with a hearing before or after his demotion. Following his demotion, Daniels was given approximately six months to requalify as a Class I engineer. As a student engineer Daniels completed several railroad trips but also failed several certification

evaluations and Union Pacific eventually terminated him by letter on March 1, 2000. From 2003 to 2006, Union Pacific also demoted the six other Class I engineers represented by BLET to Class III student engineers without providing hearings. First Am. Compl. ¶ 3. Unlike Daniels, however, the other engineers were recertified and recovered their Class I certificates.

Following his termination, Daniels petitioned for review by the LERB on August 2, 2000, asserting that Union Pacific demoted him from a Class I engineer without providing a hearing as required by 49 C.F.R. § 240.307 and improperly terminated him. On January 31, 2001, the LERB denied Daniel's petition, finding "no merit" in Daniels's argument because "the instant case involves the *denial* of certification, rather than the *revocation* of certification." Review and Determinations Concerning Union Pacific Railroad Company's Decision to Deny Mr. C. L. Daniels Locomotive Engineer Certification, FRA Docket No. EQAL 00-51, at 3 (Fed. R.R. Admin. Jan. 31, 2001) (second emphasis added). The LERB concluded that Daniels's "rights in this case are properly governed by 49 C.F.R. 240.219, which does not require a railroad to convene a hearing."[3] *Id.*

Acting on behalf of Daniels, the BLET then requested an administrative hearing before the AHO on February 16, 2001. On April 19, 2006, the AHO dismissed BLET's appeal with

---

[3]The LERB correctly concluded that Union Pacific's *denial* of Daniels's recertification is governed by section 240.219. *See* 49 C.F.R. § 240.219 (governing denial of "certification or recertification"). Before Daniels attempted recertification, however, Union Pacific demoted Daniels from a certified engineer (Class I) to a Class III student engineer, an action the LERB ignored in its analysis.

prejudice.[4] C.L. Daniels, Decision and Order of Dismissal, FRA Docket No. EQAL 00-51 (Fed. R.R. Admin. Apr. 19, 2006). Rather than appealing to the FRA Administrator, Daniels and the BLET filed a complaint in district court against Union Pacific, the FRA and the LERB.[5] The complaint is styled a "*Bivens* action" and, in Count I, alleges that Union Pacific deprived the engineers of their liberty and property interests without due process in violation of the Fifth Amendment.[6] First Am. Compl. ¶¶ 1, 73-77. Counts II and III allege that the FRA and the LERB violated the engineers' right to procedural due process by repeatedly "acquiesc[ing] and ratif[ying] and participat[ing] in the actions of defendant Union Pacific" and "demonstrat[ing] their clear bias in favor of [Union Pacific]" during the administrative hearings. *Id.* ¶¶ 82, 85.

*After* filing the complaint in district court, Daniels appealed the AHO's decision to the FRA Administrator, contending that the AHO had improperly failed to address whether Daniels was entitled to a hearing before he was demoted and that the AHO was "bias[ed] against him and . . . the case ha[d] been irreparably tainted with error." Appeal of C.L. Daniels, The Administrator's Final Decision, FRA Docket No. EQAL 2000-51, at 5 (Fed. R.R. Admin. July 31, 2006) (Daniels Order). On

---

[4]We note with dismay the fact that the AHO took more than five years to reach his decision.

[5]The defendants argue (and the district court agreed) that Daniels and the six other engineers failed to exhaust their administrative remedies because they filed their complaint before appealing the AHO's decision to the FRA Administrator. *See infra* n.9.

[6]The holding in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971), permits a plaintiff to bring a damages action against a federal officer/employee for the alleged violation of his constitutional rights.

July 31, 2006, the FRA Administrator held that Daniels had waived the issue of his right to a hearing by failing to raise it before the AHO; in addition, the Administrator found "no error of law . . . and no evidence of bias" on the AHO's part.[7] *Id.*

Meanwhile, in the district court proceedings, the defendants moved to dismiss the plaintiffs' complaint for lack of jurisdiction. On March 29, 2007, the district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(1), concluding that it lacked subject matter jurisdiction because Daniels and the other engineers failed to exhaust their administrative remedies. *Daniels*, 480 F. Supp. 2d at 194-95. As an alternative ground for dismissal, it held that the Hobbs Act, 28 U.S.C. § 2342(7), vests the court of appeals with

---

[7]Of the six other engineers—all of whom were eventually recertified after being demoted to Class III student engineers—three did not initiate any administrative action at all: as of the date of oral argument, one had an LERB petition pending, one had an AHO petition pending and the sixth—K.L. Hensley—had received an adverse Administrator's decision. *See* Appeal of K.L. Hensley, The Administrator's Final Decision, FRA Docket No. EQAL 2003-56 (Fed. R.R. Admin. Feb. 1, 2008) (Hensley Order). Like Daniels, Hensley argued that Union Pacific improperly denied him a hearing as required by 49 C.F.R. § 240.307 when it demoted him. *Id.* at 4. Acknowledging that "Hensley's argument has a superficial, gut-level appeal [and] there is logic to the suggestion that Hensley has been adversely affected," the Administrator nonetheless concluded that section 240.307 "clearly states that it is invoked only upon revocation of certification [and] [t]here is nothing in the regulation which provides that a diminution in the quality of a license is to be considered to be a revocation under the regulation or to otherwise invoke its provisions." *Id.* at 4-5. Unlike Daniels, Hensley initiated his challenge to the Administrator's decision in this Court. *See K.L. Hensley v. Fed. R.R. Admin.*, No. 08-1143 (D.C. Cir. filed Apr. 1, 2008).

exclusive jurisdiction over the claims. *Id.* at 195-96.[8] The plaintiffs filed a timely notice of appeal.

## II.

"We review the district court's legal conclusions *de novo* . . . [and] 'accept as true the facts that [the plaintiffs] allege[] in [their] complaint' in reviewing the district court's disposition of the defendants' motion to dismiss." *Rasul v. Meyers*, 512 F.3d 644, 654 (D.C. Cir. 2008) (quoting *Cummings v. Dep't of the Navy*, 279 F.3d 1051, 1053 (D.C. Cir. 2002)) (alterations in *Rasul*). Throughout the administrative proceedings as well as in district court and before us, the defendants have maintained that the plaintiffs' Class I certificates were not "revoked" but that the plaintiffs were instead "demoted" from Class I engineers to Class III student engineers. Because the regulations contain no provision for a hearing attendant on demotion, they continue, they violated no regulation (and thus no constitutional provision) in not providing one. The defendants fail to add that the regulations do not mention "demotion" at all. While they have applied various labels to the demotions, *see, e.g.,* Federal Appellees' Br. 36 n.20 (referring to revocation of Daniels's Class I certificate as "reclassifi[cation]," or "recertifi[cation] from Class I status to Class III status"); Hensley Order 5 (referring to revocation of Hensley's Class I certification as "a diminution in the quality of a license"), they have consistently avoided calling them "revocations"—attempting to similarly avoid the otherwise plain applicability of 49 C.F.R. § 240.307. But the plaintiffs' demotions resulted in the loss of their Class

---

[8]Count I consists of both the *Bivens* damages claim and a claim for injunctive relief. First Am. Compl. ¶ 77. The plaintiffs do not appeal the dismissal of the damages claim, *see* Appellants' Br. 2 n.1, and therefore we need not address the defendants' alternative "non-state actor" ground for dismissal. *See* Appellee Union Pacific's Br. 10-15.

I certifications and the only way certification can be "lost" under the regulations is by revocation.

The district court held—as an alternative ground—that it lacked subject matter jurisdiction over the plaintiffs' claims pursuant to the Hobbs Act.[9] As noted earlier, the Hobbs Act

---

[9] Although the district court also dismissed the complaint for failure to exhaust, we do not reach the exhaustion issue for several reasons. First, "[t]he word 'exhaustion' now describes two distinct legal concepts." *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004). The first "is a judicially created doctrine requiring parties who seek to challenge agency action to exhaust available administrative remedies before bringing their case to court" (non-jurisdictional exhaustion). *Id.* "The second form of exhaustion arises when Congress requires resort to the administrative process as a predicate to judicial review" (jurisdictional exhaustion). *Id.* The district court treated exhaustion as jurisdictional. *Daniels*, 480 F. Supp. 2d at 194-95. *But see Avocados*, 370 F.3d at 1248 ("We presume exhaustion is non-jurisdictional unless 'Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision.'" (quoting *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 1984))). Second, the question of exhaustion is fact specific and here varies with each plaintiff. For example, while three of the seven engineers did not seek any administrative review upon their respective demotions, engineers Hensley and Daniels ultimately appealed to (and received decisions from) the Administrator. *See* Hensley Order; Daniels Order. In addition, Hobbs Act jurisdiction is triggered by "final agency action[]." 28 U.S.C. § 2342(7). "It may be observed that the concepts of 'final decision' and 'exhaustion' are often closely intertwined and sometimes confused." *Bethlehem Steel Corp. v. EPA*, 669 F.2d 903, 908 (3d Cir. 1982). "Finality and exhaustion are not identical, however, no matter how often they converge" because "exhaustion refers to the steps which the litigant must take, whereas finality refers to the conclusion of activity by the agency." *Id.* For the purpose of analyzing—and affirming—the district court's alternative holding, we

provides that "[t]he court of appeals (other than the United States Court of Appeals for the Federal Circuit) has *exclusive* jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final agency actions described in [49 U.S.C. § 20114(c)]." 28 U.S.C. § 2342(7) (emphasis added). Included in "all final agency actions" described in section 20144(c) is "final action of the Secretary of Transportation." *See also Carpenter v. Mineta*, 432 F.3d 1029, 1032 (9th Cir. 2005) (FRA Administrator's affirmance of railroad's denial of engineer certification constitutes final agency action subject to jurisdiction of circuit court under Hobbs Act); *cf. Atchison, Topeka & Santa Fe Ry. v. Peña*, 44 F.3d 437, 441 (7th Cir. 1994) (FRA Chief Counsel's letter and FRA Federal Register publication interpreting Hours of Service Act of 1907, 45 U.S.C. §§ 61-66, constitute final agency action subject to exclusive jurisdiction of circuit court pursuant to Hobbs Act), *aff'd sub nom.*, *Bhd. v. Atchison, Topeka & Santa Fe R.R.*, 516 U.S. 152 (1996).

Count II of the plaintiffs' complaint alleges that "LERB and FRA have acquiesced in and ratified and participated in the actions of defendant Union Pacific to deprive plaintiff Daniels and other locomotive engineers . . . of their rights under the Due Process Clause of the Fifth Amendment . . . by allowing Union Pacific to revoke a Class I certificate without any hearing." First Am. Compl. ¶¶ 82-83. Count III alleges that the LERB and the FRA "demonstrated their clear bias in favor of the defendant Union Pacific in violation of the Due Process clause of the Fifth Amendment." *Id.* ¶ 85. Because Counts II and III seek review of "final agency action[]"—namely, the denial of the plaintiffs' petitions—the Hobbs Act would give exclusive jurisdiction over their claims to this Court. This does not mean, however, that we

---

assume that all of the plaintiffs have satisfied exhaustion and finality requirements.

could have necessarily exercised jurisdiction over each plaintiff's claim if the petition for review had been filed with us because not every plaintiff, it appears, *supra* n.9, may have satisfied the Hobbs Act's finality requirement.[10] *See* 28 U.S.C. § 2342(7) (court of appeals has exclusive jurisdiction over all "*final* agency actions") (emphasis added). In any event, notwithstanding the justiciability *vel non* of each plaintiff's claims in this court, the district court lacks subject matter jurisdiction over Count II and Count III because those claims, *once final*, are subject to this Court's exclusive jurisdiction pursuant to the Hobbs Act. *See Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984) ("*TRAC*") ("[W]here a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals.").

Count I—brought against Union Pacific only—alleges that Union Pacific violated the Due Process Clause of the Fifth Amendment by failing to "provide a prior hearing or prompt post deprivation hearing to determine if there is the basis for revocation of a Class I certificate under federal regulations." *Id.* ¶ 74. Union Pacific "acts under color of federal law," *id.* ¶ 1, the plaintiffs maintain, and they seek injunctive relief to "require defendant Union Pacific to hold a prior or prompt post deprivation hearing," "expunge any . . . reference to the revocation of a license as to [any] other engineer when such revocation of a license occurred without a prior hearing," "reinstate plaintiff Daniels as a locomotive engineer with the

---

[10]"Final agency action" can occur at all intermediate steps of FRA review. *See* 49 C.F.R. § 240.411(f) (FRA Administrator's decision constitutes "final agency action"); *id.* § 240.411(a) (AHO's decision constitutes "final agency action" if no timely appeal of AHO's decision); *id.* § 240.407(c) (LERB decision constitutes "final agency action" if no timely appeal of LERB decision).

right to use his Class I certificate" and "[g]rant plaintiff Daniels his full back pay and benefits and other damages"—the precise relief sought from the FRA and the LERB in Counts II and III.[11] *Id.* ¶ 77. Notwithstanding their having named only Union Pacific in Count I, we construe Count I as a challenge to the actions of the FRA and the LERB as well for two reasons. First, the standards and procedures governing certification and the revocation of certifications are codified in federal regulations. *See* 49 C.F.R. pt. 240. Union Pacific's denial of a hearing is thus based on its interpretation of the FRA regulations, an interpretation the FRA has upheld. *See* Hensley Order 5 ("There is nothing in [49 C.F.R. § 240.307] which provides that a diminution in the quality of a license is to be considered to be a revocation under the regulation or to otherwise invoke its provisions."). Accordingly, to obtain the relief sought, the plaintiffs must challenge the FRA's *interpretation* of its regulations as well as Union Pacific's *application* of the regulations. Otherwise, the plaintiffs are circumventing review of the FRA's regulations in this Court (provided for by the Congress under the Hobbs Act) by instead indirectly—in Count I—seeking review of the regulations in district court. *See Bright v. Lehman*, 725 F.2d 788, 790 (D.C. Cir. 1984) ("We will not allow appellant to circumvent [an] appeals procedure defined by Congress simply by casting a [different] label on his claim.").

---

[11]In Count II, the plaintiffs seek to require the FRA to "issue an order declaring the actions of defendant Union Pacific to be in violation of applicable and binding federal regulations," "reinstate[] [Daniels] as a certified engineer with full back-pay and benefits" and "notify all affected members of plaintiff BLET that it will comply with their rights under federal regulations." First Am. Compl. ¶ 83. In Count III, the plaintiffs request the district court to "[d]eclare that defendant FRA has violated Daniels' [sic] right to procedural Due Process" and to order the FRA to "submit a plan to ensure that the claim of plaintiff Daniels be decided in an impartial and neutral manner and to purge the administrative process of bias." *Id.* ¶ 85.

Second, the plaintiffs maintain that their Class I certifications were effectively revoked when they were demoted from Class I to Class III. *See* First Am. Compl. ¶¶ 56, 62, 69, 74, 77; *see also* Appellants' Br. 10, 12. Revocation is subject to a three-tiered level of administrative review, *see supra* p. 4, and thus a revocation challenge is ultimately aimed at the FRA, not at Union Pacific alone. Accordingly, we construe Count I as a challenge to the other two defendants' actions as well and thus within the Hobbs Act's jurisdictional reach.[12]

Relying on the Supreme Court's holding in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), the plaintiffs alternatively maintain that the district court has jurisdiction notwithstanding the Hobbs Act because all three counts involve a constitutional challenge. In *McNary*, undocumented immigrants who were denied amnesty status filed a class action

---

[12]We have cautioned against adopting a narrow interpretation of another exclusive jurisdiction vesting statute:

> [T]here are compelling policy reasons for holding that the jurisdiction of the Court of Appeals is exclusive. Appellate courts develop an expertise concerning the agencies assigned them for review. Exclusive jurisdiction promotes judicial economy and fairness to the litigants by taking advantage of that expertise. In addition, exclusive jurisdiction eliminates duplicative and potentially conflicting review, and the delay and expense incidental thereto.

*TRAC*, 750 F.2d at 78 (interpreting judicial review provision for final action of Federal Communications Commission, 28 U.S.C. § 2342(1)) (citation omitted); *see also John Doe, Inc. v. DEA*, 484 F.3d 561, 570 (D.C. Cir. 2007) (narrow interpretation of judicial review provision of Controlled Substances Act, 21 U.S.C. § 877, would "encourage[] forum shopping and encourage[] dissatisfied claimants to 'jump the gun' by going directly to the district court to develop their case instead of exhausting their administrative remedies before the agency").

in district court claiming that the application process prescribed by the Immigration and Naturalization Service (INS) violated the Due Process Clause of the Fifth Amendment. *Id.* at 487-88. The Court upheld the district court's jurisdiction to consider the plaintiffs' due process claim even though the Immigration and Nationality Act, § 210(e), 8 U.S.C. § 1160(e) (INA), barred judicial review of all INS determinations regarding the immigrants other than deportation decisions. *Id.* at 491-94. The plaintiffs insist that they "have brought what is clearly a *McNary*-type case," Appellants' Br. 23, reading *McNary* to create two exceptions to a statutory grant of exclusive jurisdiction to the court of appeals: (1) "constitutional violations that arise from a broad 'pattern and practice' of agency misconduct," *id.*, and (2) "no possibility of 'meaningful review' of the challenged practice in the Court of Appeals," Reply Br. 10 (quoting *McNary*, 498 U.S. at 497). The plaintiffs misread *McNary*.

In *McNary*, the Court did not create an exception to the INA's jurisdictional bar simply because the plaintiffs mounted a constitutional challenge—that is, the nature of the claim itself does not determine whether the jurisdictional bar applies. Instead, the availability of effective judicial review is the touchstone of the *McNary* exception. As the Court explained, "[w]ere we to hold otherwise and instead require respondents to avail themselves of the limited judicial review procedures set forth in § 210(e) of the INA, *meaningful judicial review of their statutory and constitutional claims would be foreclosed.*" 498 U.S. at 484 (emphasis added). *See also John Doe, Inc. v. DEA*, 484 F.3d 561, 569 (D.C. Cir. 2007) ("[T]he holding in *McNary* cannot be divorced from the Court's obvious concern that, absent district court review of the *McNary* plaintiffs' claims, meaningful judicial review would have been entirely foreclosed."); *TRAC*, 750 F.2d at 78 ("There may be a small category of cases in which the underlying claim is not subject to the jurisdiction of the Court of Appeals (and thus adjudication

of the claim in the District Court will not affect any future statutory review authority of the Circuit Court.)  In such cases, where a denial of review in the District Court will truly foreclose all judicial review, district court review might be predicated on the general federal question jurisdiction statute, 28 U.S.C. § 1331.");  *see also Carpenter*, 432 F.3d at 1032-34.  Accordingly, because the applicability of the *McNary* exception turns on the availability of judicial review without regard to the nature of the plaintiff's claim, we would have exclusive jurisdiction over the plaintiffs' constitutional challenges.

Again relying on *McNary*, the plaintiffs argue that the district court has jurisdiction over their claims because otherwise "there is no possibility of 'meaningful review' of the challenged practice." Reply Br. 10 (quoting *McNary*, 498 U.S. at 497).  The Hobbs Act, however, differs significantly from the INA—while the INA strips *all* courts of jurisdiction to review INS actions other than deportation decisions, the Hobbs Act vests *one* court—the court of appeals—with jurisdiction to review all final FRA action.  Accordingly, the Hobbs Act does not deprive the plaintiffs of "meaningful judicial review of their statutory and constitutional claims," *McNary*, 498 U.S. at 494, because they *can* seek such review—in the circuit court.[13]

---

[13]As noted *supra* pp. 10-11, we do not hold that we could in fact exercise jurisdiction over each plaintiff's claim because of finality questions.  Instead, we limit our holding to affirming the district court's dismissal for lack of subject matter jurisdiction.  The plaintiffs also argue that we lack the power to grant the relief sought because "Union Pacific does not even suggest how the Court of Appeals could give prospective class-type relief against the carrier itself, or reinstate the licenses of the engineers or get the FRA or Union Pacific to award back pay."  Reply Br. 14.  But the Hobbs Act grants the court of appeals "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final actions described in [49 U.S.C. § 20114]," 28 U.S.C. § 2342(7), which

For the foregoing reasons, we affirm the district court's dismissal of the plaintiffs' claims for lack of subject matter jurisdiction under the Hobbs Act.

*So ordered.*

---

includes the FRA's administration of the locomotive engineer certification program. *See* 49 U.S.C. §§ 20114, 20135; 49 C.F.R. § 1.49(m).