# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 5, 2013       Decided February 28, 2014

No. 13-1172

FRED WEAVER, JR. AND OWNER-OPERATOR INDEPENDENT
DRIVERS ASSN., INC.,
PETITIONERS

v.

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION, ET AL.,
RESPONDENTS

On Petition for Review of Final Agency Action of the
Federal Motor Carrier Safety Administration

*Paul D. Cullen*, *Sr.* argued the cause for petitioners. With
him on the briefs were *David A. Cohen*, *Joyce E. Mayers*, and
*Paul D. Cullen*, *Jr.*

*Mark W. Pennak*, Attorney, U.S. Department of Justice,
argued the cause for respondents. With him on the brief were
*Stuart Delery*, Assistant Attorney General, *Matthew Collette*,
Attorney, *Paul M. Geier*, Assistant General Counsel, U.S.
Department of Transportation, and *Peter J. Plocki*, Deputy
Assistant General Counsel.

Before: BROWN, *Circuit Judge*, and WILLIAMS AND
SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: This is a case about a minor traffic violation and its persistence in a database administered by the federal government. The petitioner, Fred Weaver, Jr., received a citation for failing to obey a Montana traffic ordinance. A record of the citation made its way into a database administered by the Federal Motor Carrier Safety Administration ("FMCSA"). Much of the information in this database is, like Weaver's citation, the product of state authorities. And under a rule adopted by FMCSA, *Privacy Act of 1974; Department of Transportation, Federal Motor Carrier Safety Administration (FMCSA) 007 Pre-Employment Screening Program*, 77 Fed. Reg. 42,548, 42,551/3 (2012) ("FMCSA Systems of Record Notice"), state officials also decide how to respond when a driver challenges a citation's inclusion in the database, as Weaver has here.

The crux of Weaver's complaint is that, in maintaining this record of the citation, FMCSA has violated the statute authorizing the Secretary of Transportation to maintain the database. He points particularly (though not exclusively) to its requirements that the Secretary "ensure, to the maximum extent practical, [that] all the data is complete, timely, and accurate," 49 U.S.C. § 31106(a)(3)(F), "provide for review and correction" of information in the database, *id.* § 31106(e)(1), and, before releasing any information from the system, both comply with certain standards of accuracy and (again) "provide a procedure for the operator-applicant to correct inaccurate information in the System in a timely manner," *id.* § 31150(b)(1), (4).

Though the parties disagree energetically on the merits, they agree that Weaver's action does not lie in this court. Weaver frankly acknowledges that he filed this suit as a

precaution, lest the district court dismiss a related suit filed there on the grounds that it should have been filed here, but only after the time to file here has expired. We agree that we lack jurisdiction. Because the parties disagree as to the reasons, and those reasons are critical to the parties' dispute, we explain them below, and end by transferring the case to the district court.

* * *

In June 2011 Weaver received a misdemeanor citation for failing to stop his truck at a weigh station as required by Montana law. Weaver challenged the citation in Montana court and it was dismissed "without prejudice"; there is some dispute whether the court found Weaver not guilty or dismissed his action as part of a deferred prosecution arrangement.

That might have been the end of it, except that a record of Weaver's citation was included in a database administered by FMCSA. This database, known as the Motor Carrier Management Information System ("MCMIS"), contains information on commercial truck drivers' safety records, such as accident reports and other safety violations. Potential employers in the motor carrier industry may, with the written permission of the driver, receive access to the data in order to screen potential employees. 49 U.S.C. § 31150(a). (The record does not disclose the employment fortunes of drivers who withhold permission.)

To meet the statutory mandate of providing a correction mechanism, FMCSA established "DataQs," a web-based dispute resolution procedure that allows "an individual to challenge data maintained by FMCSA." FMCSA Systems of Record Notice, 77 Fed. Reg. at 42,551/3. Although MCMIS is mandated by federal law and administered by a federal

agency, much of its data comes from the states, which are responsible for enforcing many FMCSA regulations, see *National Tank Truck Carriers v. Fed. Highway Admin. of U.S. Dep't of Transp.*, 170 F.3d 203, 205 (D.C. Cir. 1999). The rule leaves to the states most critical decisions on what data to submit to FMCSA and gives states the last word on whether to amend the data in response to a DataQs request: "FMCSA is not authorized to direct a State to change or alter MCMIS data for violations or inspections originating within a particular State(s). Once a State office makes a determination on the validity of a challenge, FMCSA considers that decision as the final resolution of the challenge." 77 Fed. Reg. at 42,551/3.

In March 2013 petitioner Owner-Operator Independent Drivers Association filed a DataQs request on Weaver's behalf, seeking to have the citation removed from his MCMIS profile. The request was routed to the Montana Department of Transportation, which denied it. The Association then challenged the denial in DataQs, reasoning that because the Montana court had dismissed the charges without prejudice, FMCSA's maintenance of a MCMIS record of the citation was incorrect and in violation of the statute.

The Montana authorities would have none of it. Colonel Dan Moore of the Montana Department of Transportation replied: "You are obviously confused . . . . I will explain the differences and the matter will be closed. Our decision is our decision and any further argument will be turned over [to] the FMCSA as a violation of the DQ process." J.A. 12. Understandably dissatisfied with Colonel Moore's rebuff-cum-threat, the Association filed this petition seeking to enjoin FMCSA from disseminating citations that have been overturned or dismissed.

Before proceeding to the parties' jurisdictional arguments, we pause to describe the related action in the

district court. On facts similar to those just described, the Association and four truck drivers have sought a declaratory judgment seeking essentially the same relief as Weaver. *Owner-Operator Independent Driver Ass'n v. Ferro*, No. 12-1158 (D.D.C.). The principal difference between the cases is that there at least three of the plaintiff drivers not only filed protests in DataQs but followed up with letters directly to the FMCSA Administrator, requesting that she remove the violation from MCMIS. (One plaintiff driver proceeded to her directly.) The agency declined to remove the violations itself and passed the requests on to the relevant states. Complaint, *Owner-Operator Independent Driver Ass'n*, No. 12-1158, at 10-18 (D.D.C. July 7, 2012) (Dkt #1). A few months later the Administrator sent a follow-up letter, telling the Association that the states had declined to purge the violations from the database. *Id.* at 18. The Association then brought suit in the district court, arguing that FMCSA's second letter constituted final agency action. *Id.*; 5 U.S.C. § 704 (providing generally for review of final agency actions).

The government moved to dismiss on jurisdictional grounds, arguing that the Hobbs Act, 28 U.S.C. § 2342(3), vests exclusive jurisdiction in our court. Motion to Dismiss, *Owner-Operator Independent Driver Ass'n*, No. 12-1158, at 5-8 (D.D.C. Sept. 17, 2012) (Dkt #8). The government argued that since the challenge might address the agency's "interpretation" of its regulations, it must be brought in the court of appeals. *Id.* at 7 (citing *Daniels v. Union Pac. R. Co.*, 530 F.3d 936 (D.C. Cir. 2008)). The case is stayed pending the outcome of this case.

\* \* \*

The Hobbs Act, specifically 28 U.S.C. § 2342(3)(A), provides for review in the court of appeals of all "rules, regulations, and final orders" of the Secretary of

Transportation issued under specified statutes. (It is not disputed that if, pursuant to those statutes, FMCSA issued a rule, etc., it would be covered. The statute in question here is part of subchapter III of chapter 311.) But both sides agree that FMCSA's activity (or inactivity) vis-à-vis Weaver does not qualify as a rule, regulation or final order reviewable under § 2342(3), and that therefore we lack jurisdiction.

But they disagree, of course, over what follows from that conclusion. Weaver argues that FMCSA's action (the exact nature of which we'll consider shortly) constituted final agency action, although not the type for which the Hobbs Act vests exclusive jurisdiction in the court of appeals. Therefore, he asks that we transfer the case to the district court, the proper site for initial review of final agency actions for which no statute has provided an alternative. *Int'l Bhd. of Teamsters v. Pena*, 17 F.3d 1478, 1481 (D.C. Cir. 1994); 5 U.S.C. §§ 703, 704.

The government argues that there has been no agency action relating to Weaver, and that his claim amounts to an out-of-time attack on an earlier rule—the FMCSA Systems of Record Notice. Weaver has disguised the true nature of his attack on the rule, it says, by purporting to attack the government's inaction in the face of Montana's refusal to correct the database error that Weaver alleges, an attack that it says depends on claims against the rule and on FMCSA's interpretation. Because Weaver's claim is in reality an attack on the rule, it argues, his claim is barred by the Hobbs Act's 60-day limit for seeking judicial review, which we have held is jurisdictional. *Natural Res. Def. Council v. Nuclear Regulatory Comm'n*, 666 F.2d 595, 602 (D.C. Cir. 1981). Finally, the government acknowledges that someone who is injured by a rule that he has failed to attack within the time limit may still challenge that rule, but *only* as a defense in an "enforcement action" initiated by the Secretary. FMCSA Br.

24-26; FMCSA Post-Argument Letter, No. 13-1172, at 2 (Dec. 9, 2013).

The government is mistaken in its idea that a person in Weaver's position (affected by a rule that he has failed to timely challenge) can draw the validity of the rule in question only as a defense to an enforcement action. Where Congress imposes a statute of limitations on challenges to a regulation, running from a regulation's issuance, facial challenges to the rule or the procedures by which it was promulgated are barred. *Natural Res. Def. Council*, 666 F.2d at 602. But when an agency seeks to apply the rule, those affected may challenge that application on the grounds that it "conflicts with the statute from which its authority derives," *Nat'l Air Transp. Ass'n v. McArtor*, 866 F.2d 483, 487 (D.C. Cir. 1989) (emphasis removed) (quoting *Functional Music, Inc. v. FCC*, 274 F.2d 543, 546 (D.C. Cir. 1958)); *Murphy Exploration & Prod. Co. v. Dep't of Interior*, 270 F.3d 957, 958-59 (D.C. Cir. 2001); *Graceba Total Commc'ns, Inc. v. FCC*, 115 F.3d 1038, 1040-41 (D.C. Cir. 1997); *Am. Tel. & Tel. Co. v. FCC*, 978 F.2d 727, 734 (D.C. Cir. 1992); *NLRB Union v. Fed. Labor Relations Auth.*, 834 F.2d 191, 196 (D.C. Cir. 1987); *Geller v. FCC*, 610 F.2d 973, 978 (D.C. Cir. 1979); see *Arch Mineral Corp. v. Babbitt*, 104 F.3d 660, 664 (4th Cir. 1997), at least where the statute does not expressly preclude such a challenge, *Am. Rd. & Transp. Builders Ass'n v. EPA*, 588 F.3d 1109, 1113 (D.C. Cir. 2009).

Contrary to the government's claim (from which it somewhat retreated in its post-argument letter of December 9, 2013), the sort of "application" that opens a rule to such a challenge is not limited to formal "enforcement actions." We have, for example, despite want of a prior timely attack, considered the validity of rules that an agency applied in an order imposing certain limitations on a broadcast licensee, *Functional Music*, 274 F.2d at 547-48, in an order rejecting

challenges to auction procedures to which a bidder objected, *Graceba*, 115 F.3d at 1040-41, in an order dismissing a complaint based on the FCC's tariff-filing requirements, *Am. Tel. & Tel. Co.*, 978 F.2d at 734, and in an order denying a mineral lessee's claim to certain royalty reimbursements, *Murphy Exploration*, 270 F.3d at 957-59.

Thus, to the extent that Weaver has alleged an agency action that (1) qualifies as a rule, regulation or order within the meaning of Hobbs Act § 2342(3), (2) applied the FMCSA Systems of Record Notice, and (3) occurred within 60 days of Weaver's filing, we would have jurisdiction. It is the first criterion that we find to exclude the case from our jurisdiction.

The government appears to contend that any activity of the Secretary (under the named statutes) that qualifies as a "final agency action" under 5 U.S.C. § 704 also constitutes a "final order" (if it is not a "rule" or "regulation") under § 2342(3). See FMCSA Post-Argument Letter, No. 13-1172, at 2 (Dec. 9, 2013). But the cases it cites do not confront the structure of the Hobbs Act; instead they address only the question whether such actions are equivalent for the purposes of being final and therefore permitting judicial review. Being equivalent for the purposes of finality, however, does not make them equivalent in all respects.

Indeed, the structure of the Hobbs Act runs against the government's theory. The Act contains seven subsections that provide for initial review in the court of appeals for agency actions of specified types, varying across subsections. One subsection vests the courts of appeals with jurisdiction over "all final agency actions," § 2342(7), whereas the provision here, § 2342(3), covers "rules, regulations, or final orders." These distinctions call into play the general notion that Congress is likely to have attached importance to variations of terminology in parallel contexts in a single statute. E.g.,

*Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 452, 454 (2002); *Corley v. United States*, 556 U.S. 303, 314 (2009); *Nat'l Min. Ass'n v. Dep't of Labor*, 292 F.3d 849, 856 (D.C. Cir. 2002). Thus, the Act appears to contemplate "actions" of the Secretary under the named statutes that are *not* rules, regulations or final orders, i.e., a residue of agency activity subject to initial review in the district court.

But even though § 2342(3) seems to contemplate such a residue, there remains the question of classifying FMCSA's action (assuming there is one): is it a rule, regulation or order, or does it fit in the residue assigned to review in the district court? To address that we must look to Weaver's claims of how FMCSA acted.

Weaver insists that although FMCSA has not performed any of the actions enumerated in § 2342(3), the agency has nonetheless taken reviewable action, and that the district court has jurisdiction under § 703. He suggests three possible theories for what constituted this action. First, although it was Colonel Moore who refused to remove the citation, FMCSA's policy of not altering the information submitted by the states converts Moore's decision into federal action. Second, FMCSA "acted" by failing to meet its statutory obligation to ensure the accuracy of the MCMIS data that Weaver disputes. A third possibility, discussed at length at oral argument, is that the FMCSA Administrator's letter to the Association, alleged in the district court case, was final agency action. But without an allegation linking the letter to Weaver himself, this third theory appears irrelevant, at least for this case. Weaver's first two theories add up to the proposition that FMCSA violated a statutory duty by failing, both itself and through what Weaver sees as its Montana puppet, to make a correction to which Weaver says he is statutorily entitled. Inaction, of course, can qualify as a form of agency action. See 5 U.S.C. §§ 551(13), 706(1); *Telecommunications Research & Action Ctr. v. FCC*,

750 F.2d 70, 77 (D.C. Cir. 1984); see generally *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61-65 (2004).

Without finally resolving the status of the FMCSA activity, we feel confident in assigning challenges to that activity to the district court. FMCSA's alleged action was plainly not a rule—i.e., a statement of "general or particular applicability and future effect," 5 U.S.C. § 551(4), and the terms "rule" and "regulation" are generally used interchangeably, *Nat'l Treasury Employees Union v. Weise*, 100 F.3d 157, 160 (D.C. Cir. 1996). But that does not necessarily make it an "order." The APA's architects may have considered "agency action" to consist exclusively of orders and rules, see H.R. Rep. No. 79-1980, at 20-21 (1946), a premise seemingly embodied in the APA's definitions of "order," 5 U.S.C. § 551(6) (a "final disposition . . . in a matter other than rule making") and "adjudication," *id*. § 551(7) ("agency process for the formulation of an order"). But "rule" and "order" do not in fact exhaust the field, at least when we move beyond the APA itself. In *Watts v. SEC*, 482 F.3d 501 (D.C. Cir. 2007), for example, we declined to treat an SEC refusal to let its employees testify in response to a subpoena as an "order" under § 25 of the Securities Exchange Act of 1934, 15 U.S.C. § 78y, providing for court of appeals review of "orders," pointing out among other things that the process of a decision on "whether to comply with a judicial subpoena is not typically or comfortably described as an 'adjudication' (even given the broad scope of formal and informal adjudications under the APA)." 482 F.3d at 506. This seems equally true of any "action" that may inhere in FMCSA's alleged failure to carry out its statutory duty.

The complicated history of this court's interpretation of agency review statutes also favors treating the "action" here as something other than a rule, regulation or final order. In

considering the Natural Gas Act's provision for review of "orders" of the Federal Power Commission, we initially thought it to exclude review of a rule adopted through informal rulemaking, on the ground that the Commission's decision hadn't emerged from a "quasi-judicial" procedure. *United Gas Pipe Line Co. v. FPC*, 181 F.2d 796 (D.C. Cir. 1950). But the opinion was ambiguous, and ultimately we explained it on grounds of its language about the absence of an evidentiary record, and we found the products of informal FPC rulemaking to be reviewable as "orders." *City of Chicago, Ill. v. FPC*, 458 F.2d 731, 740-41 (D.C. Cir. 1971). As we said of another statute assigning review of "orders" to the court of appeals, "It is the availability of a record for review and not the holding of a quasi judicial hearing which is now the jurisdictional touchstone." *Investment Company Inst. v. Bd. of Governors of the Fed. Reserve Sys.*, 551 F.2d 1270, 1277 (D.C. Cir. 1977) (internal quotation marks omitted); see also *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744-45 (1985) (relying in part on absence of need for any fact-finding in interpreting statute to assign review to the court of appeals).

Here the "touchstone" referred to in *Investment Company Institute* calls for placing initial review in the district court. FMCSA has not compiled a record with an eye toward judicial review—indeed it has insisted that it has no role to play in the MCMIS process. And while district courts generally cannot conduct de novo review of agency action, *Camp v. Pitts*, 411 U.S. 138, 141-42 (1973); *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), there is a narrow exception where "the record is so bare that it prevents effective judicial review," *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998) (citing *Overton Park*, 401 U.S. at 420)—a circumstance that might well prove true here.

12

* * *

Because we conclude that FMCSA's action falls short of being a rule, regulation or final order within the meaning of 28 U.S.C. § 2342(3), we lack jurisdiction under that provision and we transfer the case to the district court pursuant to 28 U.S.C. § 1631.

*So ordered.*