# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 9, 2015          Decided January 15, 2016

No. 14-1298

SILVERADO STAGES, INC.,
PETITIONER

v.

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION AND
UNITED STATES OF AMERICA,
RESPONDENTS

On Petition for Review of an Order of the
Federal Motor Carrier Safety Administration

*William H. Shawn* argued the cause and filed the briefs for petitioner.

*Gerard Sinzdak*, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Matthew M. Collette*, Attorney.

Before: ROGERS, TATEL and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: Petitioner Silverado Stages, Inc., a California charter bus service, petitions this Court for review of a Federal Motor Carrier Safety Administration ("FMCSA") determination denying Silverado's petition for administrative review after the FMCSA publicly reported that Silverado violated a number of federal and state safety regulations. Because some of Silverado's claims should have been brought before the District Court, and we find those properly before us meritless, we deny Silverado's petition.

## I.

## A.

Congress requires the Department of Transportation ("DOT") to "determine whether an owner or operator is fit to operate safely commercial motor vehicles," based upon, among other things, "the safety inspection record of such owner or operator." 49 U.S.C. § 31144(a)(1). DOT is also required to "make such final safety fitness determinations readily available to the public." *Id.* § 31144(a)(3). DOT has delegated these responsibilities to the FMCSA. *See* 49 C.F.R. § 1.86 (listing the overall responsibilities of the FMCSA).

The standards and procedures the FMCSA uses to determine the safety of motor carriers such as Silverado is provided in 49 C.F.R. § 385 *et seq. See id.* § 385.1(a) ("This part establishes the FMCSA's procedures to determine the safety fitness of motor carriers, to assign safety ratings, to direct motor carriers to take remedial action when required, and to prohibit motor carriers receiving a safety rating of 'unsatisfactory' from operating a [commercial motor vehicle]."). These procedures require the FMCSA to assign each carrier a safety rating based on an on-site examination of that carrier's operations. *See id.* § 385.9 (describing the procedure for assigning a safety rating). The result of that

examination is twofold. First, the FMCSA issues violations to carriers found to be out of compliance with pertinent safety regulations. *See id.* pt. 385, App. A (explaining the safety audit evaluation process). The FMCSA may seek civil penalties for such violations. *See* 49 U.S.C. § 521(b); 49 C.F.R. § 386.11(c). Second, based on these violations, as well as other factors such as the carrier's accident history, *see* 49 C.F.R. § 385.7, the FMCSA assigns carriers one of three ratings: "satisfactory," "conditional," or "unsatisfactory," *id.* § 385.3. An "unsatisfactory" rating precludes a carrier from operating a commercial motor vehicle in interstate commerce. 49 U.S.C. § 31144(c); 49 C.F.R. § 385.13.

A carrier may petition the FMCSA to review its safety rating pursuant to 49 C.F.R. § 385.15. The agency will adjust the carrier's rating if it finds that it made "an error in assigning [the carrier's] proposed or final safety rating." *Id.* § 385.15(a). Because the FMCSA uses the § 385.15 review process to review *only* a carrier's safety rating, the FMCSA typically will not review the validity of carrier safety violations as a part of that process. *See* FMCSA Order Dismissing Pet. For Admin. Review of Safety Rating ("FMCSA Order"), J.A. 13 ("In a petition filed under 49 CFR 385.15, the only relief afforded for any alleged errors in calculating a safety rating is an upgrade of Petitioner's safety rating. Therefore, only errors affecting a safety rating will be addressed in a 49 CFR 385.15 proceeding."). The FMCSA will review a carrier's safety violations, in addition to the safety rating itself, when, and only when, the agency is reviewing a carrier's appeal of a less-than-"satisfactory" rating, and only if it is necessary to determine whether the FMCSA should change the carrier's rating. *See* Resp't's Br. 18 n.2 ("To be clear, a carrier who received a 'conditional' or 'unsatisfactory' rating can challenge particular violations in the course of a § 385.15 proceeding, and FMCSA will correct

violation information during that proceeding if the correction is necessary to its decision to upgrade a carrier's safety rating.").

The FMCSA provides information to the public about operating motor carriers through a searchable, web-based information database called the Safety Measurement System ("SMS"). *See Safety Measurement System*, FED. MOTOR CARRIER SAFETY ADMIN., https://ai.fmcsa.dot.gov/sms/ (last visited January 5, 2016). A carrier's SMS profile displays the carrier's overall safety rating, as well as specific information about violations that either the FMCSA or other agencies have issued against that carrier. These violations are grouped into seven categories, each of which is represented by a large icon displayed on the front page of the carrier's profile. If an agency has issued certain violations against the carrier within a given category, a large, yellow warning triangle is placed on top of that category icon.[1] The FMCSA uses the SMS to collect violation information from a variety of sources, including the separate but related Motor Carrier Management Information System ("MCMIS"), to determine which carriers should be prioritized for inspections. *See* 79 Fed. Reg. 32,491, 32491-92 (June 5, 2014); 75 Fed. Reg. 18,256, 18,258 (Apr. 9, 2010).

To maintain the accuracy of the information displayed within the SMS, the FMCSA has created DataQs, "a web-

---

[1] More specifically, the FMCSA explains on each carrier's SMS profile that the warning triangles denote that the carrier "exceeds the FMCSA Intervention threshold relative to its safety event grouping based upon roadside data and/or has been cited with one or more serious violations within the past 12 months during an investigation." J.A. 94. Although warning triangles are removed from the carrier's main SMS page after the requisite period, they remain visible on the carrier's SMS history page. *See* J.A. 145-46.

based dispute resolution [system] that allows an individual to challenge data maintained by FMCSA." *Weaver v. FMCSA*, 744 F.3d 142, 143 (D.C. Cir. 2014) (internal quotation marks omitted). The FMCSA allows carriers to use DataQs to challenge those safety violations that the FMCSA will not review through its § 385.15 process. *See* 79 Fed. Reg. at 32,492 ("A driver has always been able to challenge the correctness of a violation that has been cited in a roadside inspection report using the DataQs system, whether a citation has been issued for that violation or not."). DataQs users submit their requests for review by filling in text fields in a web application. *See* DataQs Analyst Guide § 3.1, *available at* https://dataqs.fmcsa.dot.gov/Data/Guide/DataQs_Users_Guide_and_Best_Practices_Manual.pdf. (providing background on the DataQs system). DataQs also permits users to provide additional information by submitting digital documents. *See* Resp't's Br. 16 ("[C]arriers are not only permitted, but encouraged to submit as much supporting documentation as they can when filing a DataQs request." (citing DataQs Analyst Guide, *supra*, §§ 4.13-4.16)).

**B.**

The FMCSA initiated an on-site examination of Silverado's operations in April 2014. In June 2014, after completing that review, the FMCSA found Silverado to have violated a number of safety regulations. *See* J.A. 49-69. Notwithstanding these violations, the FMCSA issued Silverado a "satisfactory" rating, the highest rating available, presumably because the violations Silverado received were not substantial enough to warrant a lower rating. The FMCSA included these violations on Silverado's SMS profile, which resulted in the imposition of warning triangles

over four of the seven categories displayed on Silverado's profile. S*ee* J.A. 96.[2]

Silverado claims that the public display of these allegedly erroneous violations has caused it to lose several high-value contracts.

Silverado filed a § 385.15 petition with the FMCSA in October 2014. The petition did not challenge Silverado's "satisfactory" rating; it alleged only that the violations displayed on its SMS profile were erroneous. The FMCSA dismissed Silverado's petition, stating that "[i]n a petition filed under 49 CFR 385.15, the only relief afforded for any alleged errors in calculating a safety rating is an upgrade of Petitioner's safety rating." FMCSA Order, J.A. 13. The agency explained that "[c]hallenges to the impact of the compliance review data [*i.e.*, Silverado's safety violations] on the SMS [profile] are not within the subject matter jurisdiction of a request for administrative review of a safety rating under 49 C.F.R. 385.15." *Id.*

Silverado filed a petition for our review of the FMCSA's dismissal on December 23, 2014. Several months later, in March 2015, Silverado submitted a number of DataQs requests, urging the FMCSA to remove the allegedly erroneous violations posted on its SMS profile.

---

[2] Silverado's profile later displayed only three warning triangles after the FMCSA removed the alleged violations listed under the "Hours-of-Service Compliance" category. *See* J.A. 94; *see also* Pet'r's Opening Br. 6 (displaying a screen grab of Silverado's SMS web profile).

## II.

Silverado's petition for review boils down to two arguments. First, Silverado contests the FMCSA's dismissal of Silverado's § 385.15 petition by arguing that the dismissal was arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.[3] Second, it contends that the violations issued against it are invalid because they were not promulgated pursuant to notice-and-comment procedures and because they constitute impermissible sanctions. The first of these arguments lacks merit because the FMCSA was not required to provide Silverado with any more process than it received; the second is foreclosed by our decision in *Weaver*, 744 F.3d at 144-48.

## A.

Before reaching these arguments, however, we pause to address Silverado's criticism of the FMCSA's DataQs system, which runs throughout Silverado's briefing. Silverado calls it a "Twitter-like void," Pet'r's Opening Br. 22, and "opaque," Pet'r's Reply Br. 8. It also complains that "there is no time limit or other requirements obligating the charging state organization to respond" to DataQs requests. Pet'r's Opening Br. 22. Although the FMCSA contests much of Silverado's criticism, *see, e.g.*, Resp't's Br. 15-16 (arguing that DataQs is not a "twitter-like void" because "carriers . . . face no word limitations" and are "encouraged to submit as much

---

[3] Silverado also claims that the FMCSA violated its "administrative due process rights." *See, e.g.*, Pet'r's Opening Br. 22, 26. Yet it does not explain from where it derives such a right, or how the alleged violation differs from its claim that the FMCSA acted arbitrarily and capriciously. Accordingly, we will treat Silverado's discussion of "administrative due process" as part and parcel of its arbitrary and capricious claim under 5 U.S.C. § 706.

supporting documentations as they can"), at oral argument, the FMCSA acknowledged that there is no deadline by which the FMCSA must respond to a DataQs request. In fact, Silverado submitted its DataQs requests in March 2015 – more than nine months ago – yet the FMCSA has not responded to a number of Silverado's requests.

Despite this criticism, Silverado explicitly states in its reply brief that "[t]his is not an appeal of or collateral attack upon the FMCSA's DataQ and its deficiencies; rather, this appeal is a challenge to Respondent FMCSA's failure to correct its damaging and erroneous SMS violations . . . ." Pet'r's Reply Br. 1; *see also id.* at 5 (titling a section "Silverado Did Not Challenge and Need Not Have Challenged SMS and DataQ in Its 385.15 Petition Below"). Nor could Silverado mount a challenge to the DataQs system in this proceeding. The record indicates that Silverado did not submit its DataQs requests until approximately three months after it petitioned this Court for review of the FMCSA's order denying Silverado's § 385.15 petition. *See Ass'n of Flight Attendants-CWA v. Chao*, 493 F.3d 155, 158 (D.C. Cir. 2007) ("[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938))); *cf. Unemployment Comp. Comm'n v. Aragon*, 329 U.S. 143, 155 (1946) ("A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented . . . ."); *Hinson v. NTSB*, 57 F.3d 1144, 1149 (D.C. Cir. 1995) ("[I]n most circumstances a reviewing court should not adjudicate issues not raised in the administrative proceeding below, so that the agency has an opportunity to consider and resolve the objections prior to judicial review, and the reviewing court has the benefit of a

full record." (citing *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36-37 (1952))).

Because Silverado is not challenging the validity or effectiveness of the DataQs system, we will assume, for the purposes of Silverado's petition, that the DataQs system provides carriers with an adequate process for achieving review over the information displayed on SMS profiles.[4]

**B.**

Silverado's arbitrary and capricious claim relies on a flawed fundamental premise: that the FMCSA's refusal to review safety violations within the confines of a § 385.15 petition is impermissible because it "exempt[s] an entire class of on-line summary violations of law from any pre-or-post-violation challenge by the alleged violator." Pet'r's Opening Br. 20.

Silverado's claim must fail because that fundamental premise is incorrect. The DataQs process is not exempt from challenge; carriers are provided with an opportunity to appeal and correct erroneous violations. *See* DataQs Analyst Guide,

---

[4] Certainly, because the DataQs process is the only means by which motor carriers can receive review over certain potentially erroneous violations – violations which are publicly displayed on the FMCSA's website – we expect that the FMCSA will be particularly mindful of complaints such as Silverado's, and will work to ensure that motor carriers receive appropriate responses to their DataQs requests in a timely fashion. Should the FMCSA fail to respond in a timely fashion, carriers such as Silverado may seek a writ of mandamus compelling agency action. *See, e.g.*, *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418-20 (D.C. Cir. 2004) (granting mandamus where the agency had failed to respond to a petition under the Endangered Species Act for a significant period of time).

*supra*, § 3.2 (explaining that carriers may use the DataQs system to "request the review of various types of data including . . . data documented during a roadside safety inspection" and "data collected during investigations"); 79 Fed. Reg. at 32,492.

Moreover, an agency's interpretation of its own regulations is generally "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks omitted). Here, the FMCSA has interpreted § 385.15 to permit only those petitions that seek review of a carrier's safety rating and not its individual safety violations. This is a reasonable interpretation. The consequences of a less-than-"satisfactory" rating can be severe – most notably by precluding the carrier from operating in interstate commerce. *See* 49 U.S.C. § 31144(c)(1); 49 C.F.R. § 385.13. It is therefore sensible for the FMCSA to prioritize review for those carriers with sub-par ratings; it ensures that the FMCSA's compliance review process precludes only those carriers that should, in fact, be kept from operating. Carriers with satisfactory ratings may still have their violations reviewed; they simply must use the DataQs system, rather than the § 385.15 review process, to do so.

## C.

Silverado's remaining argument – that the FMCSA, in issuing safety violations against Silverado, failed to comply with notice-and-comment procedures and levied impermissible sanctions against it – is not properly before this Court. According to our decision in *Weaver*, such challenges must be brought in the first instance before the District Court.

In *Weaver*, petitioners challenged the FMCSA's refusal to remove a safety violation contained in an individual

driver's MCMIS profile after petitioners filed a DataQs request with the FMCSA seeking the violation's removal. *See* 744 F.3d at 143-44. Petitioners brought their challenge to the FMCSA's refusal directly to this Court pursuant to the Hobbs Act, 28 U.S.C. § 2342, which provides this Court with exclusive jurisdiction over a determination that concerns, among other things, the validity of "all rules, regulations or final orders" of the FMCSA. 28 U.S.C. § 2342(3); *see also Weaver*, 744 F.3d at 144-45; *Am. Trucking Ass'ns, Inc. v. FMCSA*, 724 F.3d 243, 246 (D.C. Cir. 2013). We held that the FMCSA's refusal to remove the carrier's violation did not constitute a final agency action under the Hobbs Act, and that therefore petitioners needed to bring their challenge in the District Court. *Weaver*, 744 F.3d at 146-48.

Following *Weaver*, we hold that Silverado's challenge to its safety violations must also be brought initially before the District Court. Accordingly, we lack authority to hear Silverado's safety violations challenge.

\*\*\*

For the foregoing reasons, we deny the petition for review.

*So ordered.*