[3 NE3d 128, 980 NYS2d 62]

In the Matter of Council of the City of New York, Respondent, v Department of Homeless Services of the City of New York et al., Appellants.

Argued October 8, 2013; decided November 26, 2013

**POINTS OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel*, New York City (*Ronald E. Sternberg, Leonard Koerner* and *Steven Goulden* of counsel), for appellants. The courts below erred in concluding that the Eligibility Procedure, which vests significant discretion in decision makers and has no legal effect but is merely explanatory of existing state law, is a rule that must be issued pursuant to the New York City Administrative Procedure Act. (*Matter of Cordero v Corbisiero*, 80 NY2d 771; *Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health*, 66 NY2d 948; *Matter of Schwartfigure v Hartnett*, 83 NY2d 296; *Matter of Homestead Funding Corp. v State of N.Y. Banking Dept.*, 95 AD3d 1410; *Matter of 439 E. 88 Owners Corp. v Tax Commn. of City of N.Y.*, 307 AD2d 203; *Matter of Dry Harbor Nursing Home & Health Related Facility v Axelrod*, 137 AD2d 962, 73 NY2d 701; *Matter of New York City Tr. Auth. v New York State Dept. of Labor*, 88 NY2d 225; *Matter of Singh v Taxi & Limousine Commn. of City of N.Y.*, 282 AD2d 368; *Matter of Taylor v New York State Dept. of Correctional Servs.*, 248 AD2d 799; *Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854.)

*Elizabeth R. Fine, General Counsel*, New York City (*Jeffrey P. Metzler* of counsel), for respondent. I. The procedure is void because it is a rule that was not promulgated in accordance with the New York City Administrative Procedure Act. (*People v Cull*, 10 NY2d 123; *Matter of Alca Indus. v Delaney*, 92 NY2d 775; *Matter of Jones v Smith*, 64 NY2d 1003; *Matter of Schwartfigure v Hartnett*, 83 NY2d 296; *Matter of Chase Natl. Bank v*

*Guardian Realties, Inc.*, 283 NY 350; *Lamie v United States Trustee*, 540 US 526; *Ali v Federal Bureau of Prisons*, 552 US 214; *Matter of J.D. Posillico, Inc. v Department of Transp. of State of N.Y.*, 160 AD2d 1113.) II. The New York City Administrative Procedure Act's exception for a statement which in itself has no legal effect but is merely explanatory does not apply. (*1700 York Assoc. v Kaskel*, 182 Misc 2d 586; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Matter of Home Care Assn. of N.Y. State v Dowling*, 218 AD2d 126; *Matter of Jones v Smith*, 64 NY2d 1003; *Matter of New York State Coalition of Pub. Empls. v New York State Dept. of Labor*, 60 NY2d 789; *Cubas v Martinez*, 8 NY3d 611; *National Assn. of Ind. Insurers v State of New York*, 207 AD2d 191; *DeBonis v Corbisiero*, 178 AD2d 183.)

## OPINION OF THE COURT

GRAFFEO, J.

In 2011, the New York City Department of Homeless Services (DHS)—the entity charged with providing Temporary Housing Assistance (THA) to homeless men and women in New York City—announced the adoption of a new Eligibility Procedure that required that applicants meet a need standard and cooperate with intake workers in relation to investigations of need. The Council of the City of New York (City Council) brought this declaratory judgment action asserting that the new procedure could not be implemented due to DHS's failure to comply with the notice and hearing provisions in the New York City Administrative Procedure Act (CAPA) (NY City Charter ch 45). Both lower courts concluded that CAPA had been violated (2012 NY Slip Op 30400[U] [Sup Ct, NY County 2012]; 103 AD3d 464 [1st Dept 2013]) and, because we agree, we now affirm.

CAPA imposes procedural requirements on New York City agencies relating to the promulgation of rules governing local agency practices. These include a requirement that the public and the City Council be given at least 30-days notice of the adoption of a new rule, that a public hearing be held prior to implementation and, in some circumstances, the proposal must be reviewed by the City Law Department and Mayor. It is undisputed that DHS did not comply with CAPA prior to adopting the new protocol—its position is that the Eligibility Procedure is not a "rule" triggering CAPA or that it falls within an exemption to CAPA's mandates. We address each argument in turn.

CAPA defines a "rule" as "the whole or part of any statement or communication of general applicability that . . . implements or applies law or policy, or . . . prescribes the procedural requirements of an agency" (NY City Charter § 1041 [5]). When interpreting the State Administrative Procedure Act (SAPA), which defines a "rule" in comparable terms, we have stated that "only a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers constitutes a rule or regulation" that is subject to SAPA (*Matter of New York City Tr. Auth. v New York State Dept. of Labor*, 88 NY2d 225, 229 [1996] [internal quotation marks omitted]; *see Matter of Schwartfigure v Hartnett*, 83 NY2d 296, 301 [1994]). We have further described rules as "rigid, numerical polic[ies] invariably applied across-the-board to all claimants without regard to individualized circumstances or mitigating factors" (*Schwartfigure*, 83 NY2d at 301).

DHS's nine-page Eligibility Procedure directs that intake workers follow a detailed, multi-step process when determining the eligibility of applicants for THA and requires the use of uniform standards relating to the degree of cooperation demanded of an applicant, the circumstances constituting an adequate showing of need and the like. The policy is clearly intended for broad application—it pertains to all single adult applicants who seek THA. Mandatory procedures and uniform standards of this type have generally been determined to be rules under our precedent (*see e.g. id.* [50% setoff policy for recoupment of unemployment insurance overpayments was a rule under general definition in SAPA]; *Matter of Cordero v Corbisiero*, 80 NY2d 771 [1992] ["Saratoga policy" requiring jockeys who committed violations during a Saratoga Racecourse meet and appealed their disciplinary determinations to serve their penalties at the next Saratoga meet was mandatory procedure that should have been promulgated as a rule]; *see generally Matter of Jones v Smith*, 64 NY2d 1003 [1985] [creation of three-tier inmate disciplinary hearing system was a rule that should have been filed with Secretary of State under NY Const, art IV, § 8]).

Since DHS intended that the Eligibility Procedure would apply prospectively to all adult applicants for THA, the procedure stands in contrast to practices or policies undertaken by an agency on an ad hoc basis or through the exercise of considerable discretion. For example, the procedure differs significantly

from the Office of General Services (OGS) bid withdrawal criteria considered in *Matter of Alca Indus. v Delaney* (92 NY2d 775 [1999]). Those criteria were not intended to be used in all future competitive bidding contracts but were merely included in the bidding invitation documents relating to a specific contract, with no indication that OGS employees would invariably be bound by the policy again, regardless of the circumstances. As we explained in *Alca*, a distinction must be drawn between a practice occasionally employed in the discretion of the agency and a policy that "sets standards that substantially alter or, in fact, can determine the result of future agency adjudications" (92 NY2d at 778).

DHS argues that the Eligibility Procedure is not a rule because DHS workers exercise some measure of discretion in resolving certain issues relevant to eligibility, such as whether an applicant has provided adequate cooperation during the need assessment process. But the procedure itself is mandatory—all intake workers must follow it, regardless of the circumstances presented by an individual applicant—and many of the standards articulated in it are mandatory in the sense that their application will dictate whether an individual will or will not receive benefits. For example, applicants are required to produce documentation pertaining to prior housing, financial resources and mental or physical impairment (which may necessitate the signing of a medical release) and if they fail to do so without a valid reason (mental or physical impairment), this "constitutes a failure to cooperate" mandating denial of benefits. Similarly, the procedure specifies that a single adult who has $2,000 of on-hand assets "must utilize his/her resources to reduce or eliminate his/her need for emergency shelter" prior to being eligible for benefits. Another section directs that "[i]f an applicant has tenancy rights at any housing option, that residence will be deemed the viable housing option and the applicant will be found ineligible, provided there is no imminent threat to health or safety." These concrete provisions substantially curtail, if not eliminate, an intake worker's discretion to grant THA benefits. In fact, there are several specific directives in the Eligibility Procedure that appear to compel intake workers to deny benefits based on the presence or absence of a single factor, regardless of other circumstances that might support a determination of eligibility. The procedure, which is itself mandatory, requires the application of standards that are dispositive of the outcome.

For this reason, DHS's Eligibility Procedure is distinguishable from the penalty guidelines deemed not to be a rule in *Matter of New York City Tr. Auth.* (88 NY2d 225 [1996], *supra*). Although the guidelines provided a numerical formula that could be used to calculate the appropriate penalty, there was no requirement that the formula be rigidly enforced—the agency retained discretion to impose a penalty other than the one suggested by the formula if circumstances warranted. Thus, the formula was not necessarily determinative of future penalty cases but merely provided a structure to guide the discretion of agency employees (*see also Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health*, 66 NY2d 948, 950 [1985], *revg for reasons stated in op of Levine, J.* 109 AD2d 140, 148 [3d Dept 1985] [50% analysis used as one factor in determining whether to issue a certificate of need permitting expansion of health service was not a rule because it was "nothing more than a nonconclusive, nonbinding guideline to be weighed along with other factors"]). The same is not true here where intake workers are required to use the Eligibility Procedure with respect to all future THA applications and to make benefit determinations based on its articulated standards.

Even when a procedure or policy constitutes a rule it may, nonetheless, be exempt from CAPA's procedural requirements if it is covered by a CAPA exemption. In this case, DHS points out that THA is a state benefit that is dispensed by local social services agencies. Because many of the provisions in the Eligibility Procedure are derived from state regulations and interpretive statements governing the provision of THA, DHS maintains that the new protocol falls within the CAPA exemption for any "form, instruction, or statement or communication of general policy, which in itself has no legal effect but is merely explanatory" (NY City Charter § 1041 [5] [b] [ii]), a provision similar to the "interpretive statements" exemption in SAPA (*see* State Administrative Procedure Act § 102 [2] [b] [iv]). Under the latter, state agency practices or statements that merely implement, explain or interpret a standard or requirement already compelled by law are exempt from SAPA's procedural requirements (*see e.g. Cubas v Martinez*, 8 NY3d 611 [2007] [where regulation required that driver's license applicants supply a Social Security number or prove they were ineligible to receive one, DMV memorandum that specified type of documentation that would fulfill regulatory requirement was exempt since it merely specified

what proof was acceptable to meet the predetermined standard]; *Matter of Elcor Health Servs. v Novello*, 100 NY2d 273 [2003] [Department of Health's "actual improvement standard" was exempt because it constituted a reasonable interpretation of regulation requiring the agency to apply a "restorative therapy qualifier" when categorizing nursing home patients for purposes of assignment of reimbursement rate]).

The situation presented here is unlike the scenarios we have encountered in prior cases involving the SAPA "interpretive statements" exemption. In this case, a municipal agency—DHS—is implementing statutory and regulatory authority imposed not by a municipal executive or legislative body but by another level of government—the State. Unlike SAPA, which contains no provision addressing such a situation, CAPA recognizes that City agencies will sometimes be required to adopt "rules" (i.e., procedures or standards) to effectuate new federal or state statutory or regulatory requirements. As relevant here, the subdivision requiring review by the City Law Department and the Mayor contains an exception stating that such review is not required for "rules that . . . implement particular mandates or standards set forth in newly enacted . . . state . . . laws, regulations or other requirements with only minor, if any, exercise of agency discretion in interpreting such mandates or standards" (*see* NY City Charter § 1043 [d] [4] [iv]).* This means that even if DHS's Eligibility Procedure is largely duplicative of the pertinent state statutes and regulations (i.e., even if it would otherwise fall within SAPA's interpretive statements exemption), it is exempt under CAPA from only one aspect of the procedural mandate—the requirement of prior review by the City Law Department and Mayor; CAPA's notice and hearing requirements remain applicable. Because DHS did not follow the notice and hearing steps necessary to formally

---

* In a sense, the state regulations and directives cited by DHS are not "new" since they were adopted by the state agency overseeing THA in the mid 1990s. However, for reasons that are not evident from the record, the Eligibility Procedure constitutes DHS's first attempt to enforce these provisions of state law in relation to homeless adult men and women. Viewed in this light, the state law is "new" within the meaning of section 1043 (d) (4) (iv). Were we to interpret the term "new" narrowly to exclude a state law that has been on the books for some time but that has not yet been enforced by an agency, the City could, through inordinate delay, avoid compliance with CAPA requirements—something the drafters of CAPA could not have intended.

promulgate the Eligibility Procedure, the provision is unenforceable until compliance is achieved.

█ DHS argues that it should not have to comply with CAPA's prerequisites because the new standards are largely compelled by state law and therefore have no independent legal effect. Even assuming that this is an accurate description of the Eligibility Procedure, the drafters of the City Charter apparently believed that certain of CAPA's requirements should nonetheless remain applicable when a City agency is implementing a new state law. This was a reasonable legislative choice for, when a City agency is following a directive issued by another level of government, local officials—such as the City Council—may be unaware of relevant state or federal requirements. The notice and hearing process raises local awareness and provides an opportunity for stakeholders to be heard concerning whether the City agency's proposed manner of implementation is the best approach to take in light of local concerns. This case demonstrates the value of such a requirement for DHS does not dispute that local agencies possess some measure of discretion when determining how best to implement state directives in relation to THA. To the extent DHS's hands are tied in some respects due to certain strict standards found in the pertinent state regulations, the agency can assert this point during the regulatory review process.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN and Judges READ, SMITH, PIGOTT and RIVERA concur; Judge ABDUS-SALAAM taking no part.

Order affirmed, with costs.