Matter of Lynch v New York City Civilian Complaint Review Bd. (2020 NY Slip Op 03062)





Matter of Lynch v New York City Civilian Complaint Review Bd.


2020 NY Slip Op 03062


Decided on May 28, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 28, 2020

Friedman, J.P., Renwick, Kern, Oing, JJ.


10995 152235/18

[*1]In re Patrick J. Lynch, etc., et al., Plaintiffs-Petitioners-Respondents-Appellants,
v
The New York City Civilian Complaint Review Board, et al., Defendants-Respondents-Appellants-Respondents. James P. O'Neill, etc.,Nominal Defendant.


James E. Johnson, Corporation Counsel, New York (Kevin Osowski of counsel), for appellants-respondents.
Golenbock Eiseman Assor Bell & Peskoe LLP, New York (Matthew C. Daly of counsel), for respondents-appellants.



Order, Supreme Court, New York County (Melissa A. Crane, J.), entered February 28, 2019, which, insofar as appealed from as limited by the briefs, granted the hybrid CPLR article 78 petition/complaint to the extent of declaring invalid Rules of City of New York Civilian Complaint Review Board (38-A RCNY) §§ 1-11(a) and (b), 1-33(a), and 1-42(h), and denied the petition/complaint as to Rules 1-15(a), 1-24(d) and (l), 1-31(b), 1-44, and 1-53(a) and the resolution to begin investigating alleged sexual misconduct, modified, on the law, to deny the petition as to invalidate Rules 1-11(a) and (b) and vacate the declaration that those rules are invalid, and to grant the petition as to the sexual misconduct resolution, and it is declared that the resolution is invalid, and otherwise affirmed, without costs.
Defendant-respondent The New York City Civilian Complaint Review Board (the CCRB) investigates allegations of police misconduct toward members of the public (NY City Charter § 440[a]). It is empowered to receive, investigate, hear, make findings, and recommend action upon complaints that allege misconduct involving excessive use of force, abuse of authority, discourtesy or use of offensive language (FADO) (id. § 440[c][1]). At issue in this appeal are certain amended rules adopted by the CCRB in 2018 (see NY City Charter § 440[c][2]; see also id. [City Administrative Procedure Act] [CAPA] § 1043) and a resolution, also adopted in 2018, to begin investigating sexual misconduct, which previously had been referred to the New York City Police Department (NYPD) Internal Affairs Bureau (IAB). Petitioners contend that the rules and the sexual misconduct resolution are invalid because, inter alia, they exceed the CCRB's jurisdiction and are arbitrary and capricious.
38-A RCNY 1-11(a), as amended, permits any individual having personal knowledge of alleged misconduct by a member of NYPD to file a complaint. "Personal knowledge" is defined as knowledge "gained through firsthand observation or experience" (38-A RCNY 1-01). This rule is within the CCRB's statutory authority and is rationally rooted in the New York City Charter's directive that the CCRB receive complaints from "members of the public" (NY City Charter § 440[a]).
38-A RCNY 1-11(b), as amended, gives the CCRB discretion to investigate complaints filed by "Reporting Non-Witnesses," i.e., persons "without personal knowledge" of the alleged misconduct (38-A RCNY 1-01). This rule is rationally related to the purpose of the establishment of the CCRB, i.e., that the investigation of complaints of police misconduct "is in [*2]the interest of the people of the city of New York and the New York city police department" (NY City Charter § 440[a]).
There is no basis for Supreme Court's speculation that 38-A RCNY 1-11(a) and (b), as amended, would result in "a mass influx of complaints based on unreliable information." Rule 1-11(b) provides a noninclusive list of the factors to be considered in determining whether to investigate a complaint by a nonwitness, among which are "the nature and/or severity of the alleged misconduct, . . . the practicability of conducting a full investigation . . . and the numbers of complaints received by the Board regarding the incident." Thus, the CCRB would serve as its own gatekeeper for the investigation of nonwitness complaints.
We are not persuaded by petitioner's alternative argument that Rules 1-11(a) and (b) are invalid because only those who are personally aggrieved by the misconduct they allege, i.e., victims of the misconduct, may file a complaint. The fact that the Charter contemplates that complaints will be filed by "members of the public," without referencing any specific members of the public, suggests that pursuant to the Charter, complaints may be filed by victims and nonvictims alike. Petitioner's assertion that complaints may be filed by "complainants," a term which appears elsewhere in the Charter, does not provide support to the above argument as a complainant, self-evidently, is merely a person who files a complaint (see Black's Law Dictionary 323 [9th ed 2009]), while a "victim" is a person "harmed by a crime, tort, or other wrong" (id. at 1703). Although these terms are frequently used interchangeably, particularly in the criminal context, they are distinct, and sometimes the distinction is significant (see generally People v DiNapoli, 369 P3d 680, 683, 685 [Colo App 2015], cert denied 2016 WL 768341, 2016 Colo LEXIS 221 [2016]). Moreover, the broad nature of much of the CCRB's FADO jurisdiction, which, as indicated, includes complaints of discourtesy and use of offensive language (NY City Charter § 440[c][1]), naturally suggests that complaints may be filed by members of the public at whom the misconduct is not directed. Indeed, it is easy to imagine a scenario in which a witness to discourtesy or offensive language might wish to file a complaint while the object of the discourtesy or offensive language might not.
38-A RCNY 1-15(a), as amended, authorizes the CCRB Chair to investigate complaints of misconduct filed after the expiration of Civil Service Law (CSL) § 75(4)'s 18-month statute of limitations period, which relates to the commencement of removal and disciplinary proceedings. Specifically, CSL 75(4) provides, in pertinent part, that "no removal or disciplinary proceeding shall be commenced more than eighteen months after the occurrence of the alleged incompetency or misconduct complained of . . . ." Supreme Court properly found that the amended rule does not run afoul of the statute of limitations and is not arbitrary or capricious. Initially, amended Rule 1-15(a) merely authorizes the CCRB to investigate a complaint. It does not authorize the commencement of any removal or disciplinary proceedings after the 18-month statute of limitations has expired, which is precisely what is barred by CSL 75(4). Further, after an investigation, the CCRB can make recommendations short of removal and disciplinary proceedings, such as instructions or training for the offending officer, which would not implicate CSL 75(4)'s statute of limitations. Additionally, if the CCRB determines that the misconduct complained of rose to the level of criminal conduct, which is outside of the CCRB's jurisdiction, the CCRB can refer the matter to the appropriate agency for action, which also does not violate CSL 75(4). Moreover, these actions comport with the CCRB's mandate to investigate and "make findings and recommend action." Contrary to the dissent's contention, the legislature, in enacting CSL 75(4), could have barred an agency from investigating all complaints and making any recommendation whatsoever after the expiration of the 18-month statute of limitations. However, it did not do so and instead, chose only to bar the commencement of removal or disciplinary proceedings after the expiration of the statute of limitations.
The CCRB amended 38-A RCNY 1-24(d), relating to "Conduct of Interviews," to direct that police officers be informed at the beginning of the interview that intentionally false statements may be grounds for dismissal under the NYPD Patrol Guide. Additionally, revised Rule 1-24(l) provides for civilian interviewees to be notified at the beginning of the interview that they will be asked to sign a verification statement at the end of the interview and, that at the end of the interview, the interviewee will be asked to sign a verification statement attested to by a [*3]commissioner of deeds. Supreme Court properly found that both provisions were rational as they satisfy the Charter's requirement for sworn statements from complainants and witnesses. Although the rule's requirement that police officers give statements under express penalties of perjury is more rigorous than its provision for civilians to sign verifications, police officers and civilians are not similarly situated. The police officers face the possibility of dismissal if they make false statements and the rule merely reminds the officers of the potential consequences they will face. Further, Supreme Court properly credited the CCRB's contention that requiring civilian witnesses to sign the verification form at the beginning of the interview rather than at the end could discourage some civilians from testifying.
38-A RCNY 1-31(b) formerly required the CCRB to sit in panels with at least one City Council, Mayoral and Police Commissioner designee. The CCRB amended the rule to permit panels to deviate from this requirement and to consist of members from only two of the categories, where strict compliance would delay the CCRB's operations. Supreme Court properly found the amended rule to be rational because the Charter only requires that the panels be formed with members from two of the categories and that if there is an emergency situation, the CCRB needs to proceed rapidly. Petitioner's contention that the rule will tend to prejudice police officers because Police Commissioner designees are fewer in number and therefore less likely to be available for a given panel is speculative.
38-A RCNY 1-33(a), which was amended to permit consideration of prior unsubstantiated complaints, provided they were not the "sole" basis for making findings, was properly invalidated by the Supreme Court. Rule 1-33(a), as amended, is invalid because the Charter itself forbids any consideration of prior unsubstantiated complaints. Indeed, the Charter specifies that "No finding or recommendation shall be based solely upon an unsworn complaint or statement, nor shall prior unsubstantiated, unfounded or withdrawn complaints be the basis for any such finding or recommendation" (NY City Charter § 440[c][1][emphasis added]). The omission of the word "sole" in the clause at issue should be taken to have been deliberate and a contrast to the preceding clause, thereby signifying a directive that prior unsubstantiated complaints play no role in subsequent findings.
38-A RCNY 1-42(h) was amended to provide that, after referral of a case for prosecution by the CCRB's Administrative Prosecution Unit (APU), the CCRB's Chief Prosecutor or Executive Director or designee may ask the panel to add allegations, or to reconsider unsubstantiated allegations for substantiation, upon written notice to all parties. In so doing, the CCRB noted that the memorandum of understanding (MOU) between itself and the NYPD, which provided for prosecution of cases by the APU, analogized the APU to the NYPD's Department Advocate's Office (DAO), which prosecuted internal NYPD disciplinary proceedings. Supreme Court properly invalidated amended Rule 1-42(h) because the Charter does not give the CCRB this power. The Charter empowers the CCRB only to make findings and recommendations for action by the Police Commissioner (see NY City Charter §§ 440[c][1], [d][3]). Among other things, the CCRB can recommend to the Police Commissioner that charges and specifications be brought and the Police Commissioner can accept or reject this recommendation. The MOU provides a mechanism for delegating to the APU prosecution of CCRB-recommended charges and specifications accepted by the Commissioner. Amended charges and specifications, being in effect, new charges, would have to be submitted to the Commissioner as recommendations. This is a limitation imposed by the Charter. Since neither the CCRB nor the NYPD has the power to override the Charter, the two agencies' MOU cannot do so either.
38-A RCNY 1-44 was amended to provide for non-FADO misconduct to "be noted in case dispositions by categories describing the possible misconduct and the evidence of such misconduct." Supreme Court properly found the amended rule to be rational based on the CCRB's explanation that the revision codified existing practice and was designed to make a record of the existence of possible non-FADO misconduct, which would likely be referred to another agency, without making any findings or recommendations with respect thereto. Contrary to the dissent's assertion that the revision exceeds the CCRB's FADO jurisdiction because it incorporates non-FADO findings into the case disposition, the amended rule specifies that [*4]potential non-FADO misconduct is to be "noted" as "possible misconduct" with a listing of evidence of such misconduct and thus entails neither a finding nor a determination made by the CCRB.
38-A RCNY 1-53(a) authorized the CCRB's Executive Director to delegate duties to CCRB members or "senior staff." The CCRB amended the rule to expand the Executive Director's authority to delegate to all "Agency Staff" and not merely "senior staff." Supreme Court properly found the amended rule to be rational and not overbroad because it conforms with the requirements of the Charter. Specifically, the Charter gives the CCRB the power "to appoint such employees as are necessary to exercise its powers and fulfill its duties" and it does not prohibit the Executive Director from further delegating duties (NY City Charter § 440[c][5]). Moreover, to the extent that problems may arise with the Executive Director's delegation of duties, including a lack of transparency, Rule 1-53(a)(2) makes clear that the CCRB may limit the Executive Director's authority at any time by further resolution.
In addition to CCRB's adoption of the revised rules, the CCRB passed a resolution to begin investigating allegations of sexual misconduct. The resolution to begin investigating allegations of sexual misconduct announced a change from the CCRB's historic practice of referring such allegations to the NYPD, on the ground that "sexual misconduct by a police officer is, at its core, an abuse of authority" (which is included in the CCRB's FADO jurisdiction). The CCRB resolved that it would immediately begin investigating allegations of what it termed "Phase 1" sexual misconduct, i.e., generally, sexual harassment without physical contact. It would also begin training and preparing to investigate "Phase 2" sexual misconduct, i.e., generally, sexual conduct involving physical contact, and would begin investigating Phase 2 sexual misconduct allegations upon the Executive Director's report that the CCRB was "ready" for Phase 2.
By declaring that the CCRB would assert jurisdiction over an entire category of misconduct that it had historically referred as a matter of policy, the resolution announced a sweeping policy change that materially affected the rights of all alleged victims of sexual misconduct and allegedly offending police officers "equally and without exception," and thus amounted to the adoption of a new "rule" (Matter of Singh v Taxi & Limousine Commn. of City of N.Y., 282 AD2d 368, 368 [1st Dept 2001], [citing, inter alia, NY City Charter § 1041(5)(a)(iii)], lv denied 96 NY2d 720 [2001]). However, because the CCRB undisputedly did not follow the public vetting process required by CAPA for adopting a new rule, the sexual misconduct resolution is a nullity (NY City Charter § 1043; see Callahan v Carey, 2012 NY Slip Op 30400[U] [Sup Ct, NY County 2012], affd for reasons stated below 103 AD3d 464 [1st Dept 2013], affd sub nom Matter of Council of the City of N.Y. v Department of Homeless Servs. of the City of N.Y., 22 NY3d 150 [2013]).
All concur except Friedman, J.P. who
dissents in part in a memorandum
as follows:




FRIEDMAN, J.P. (dissenting in part)


For the reasons discussed below, while I otherwise concur in the majority's disposition of this appeal, I respectfully dissent to the extent the majority affirms Supreme Court's denial of the petition insofar as it seeks invalidation of revised § 1-15(a) of the Rules of the Civilian Complaint Review Board (CCRB) and the final sentence of revised § 1-44 thereof. In my view, these amendments to the CCRB Rules should be invalidated on the ground that each of them exceeds the power granted to the CCRB by section 440 of the Charter of the City of New York (NY City Charter § 440).
I turn first to revised § 1-15(a) of the CCRB Rules, which, as noted, was sustained by Supreme Court when challenged in this article 78 proceeding by plaintiffs-petitioners Patrolmen's Benevolent Association (PBA) and its president. Revised § 1-15(a) provides that the CCRB may, in its discretion, investigate a complaint filed "after the 18-month statute of [*5]limitations has expired pursuant to Civil Service Law § 75(4)."[FN1] The referenced statute of limitations of Civil Service Law § 75(4) bars the commencement of a removal or disciplinary proceeding against a covered civil servant (including a member of the New York City Police Department)
"more than eighteen months after the occurrence of the alleged incompetency or misconduct complained of and described in the charges . . . , provided, however, that such limitation[] shall not apply where the incompetency or misconduct complained of and described in the charges would, if proved in a court of appropriate jurisdiction, constitute a crime."
In upholding revised § 1-15(a), the majority appears to rely primarily, as did Supreme Court, upon the Civil Service Law's "crime" exception to the 18-month statute of limitations for disciplinary proceedings. However, the authority to investigate late complaints purportedly conferred on the CCRB by revised § 1-15(a) is not limited to complaints of alleged misconduct that would also constitute a criminal offense. Moreover, the CCRB, in defending revised § 1-15(a) upon this appeal, places no reliance on the "crime" exception to the disciplinary statute of limitation. In fact, the exception is not even mentioned in the section of the CCRB's appellate brief addressing this issue, and the CCRB has never expressed, either on this appeal or in the record, any intention to limit its investigation of time-barred complaints to those alleging conduct that might constitute a criminal offense. On the contrary, as noted by the majority, the CCRB states that, should it make a finding of noncriminal misconduct that occurred more than 18 months before the complaint was filed, it will recommend the imposition of "informal discipline, such as an instruction from the officer's supervisor or additional training."
The "crime" exception to the Civil Service Law's 18-month statute of limitations, even if it could save a hypothetical rule authorizing the CCRB to investigate a late complaint of misconduct that possibly constitutes a crime, cannot save revised § 1-15, which contains no such limitation [FN2]. NY City Charter § 440 mandates that the CCRB's findings and recommendations be "submitted to the police commissioner" — necessarily implying that the CCRB's powers are limited to complaints of misconduct on which the police commissioner can act by imposing discipline. Under Civil Service Law § 75(4), the commissioner has no power to impose discipline on an officer based on noncriminal misconduct that occurred more than 18 months before the charge was filed. Accordingly, because revised § 1-15(a) purports to authorize the CCRB to investigate a complaint of alleged misconduct of any kind (not just potentially criminal misconduct) that occurred more than 18 months before the complaint was filed, the provision is impermissibly overbroad and should be invalidated in its entirety (see Boreali v Axelrod, 71 NY2d 1, 14 [1987]).
In an attempt to justify the effective elimination of the disciplinary statute of limitations effected by revised § 1-15, the majority draws a distinction between "investigat[ing] a complaint," on the one hand, and, on the other hand, "the commencement of [a] removal or disciplinary proceeding[]." Only the latter, according to the majority, is subject to the 18-month statute of limitations. This distinction is without foundation. Far from drawing a distinction between investigations and proceedings, Civil Service Law § 75 makes clear that an investigation is part of a disciplinary proceeding. Under Civil Service Law § 75(4), the limitation period runs from "the occurrence of the alleged incompetency or misconduct complained of," not from the [*6]completion of the investigation. Further, under Civil Service Law § 75(2), an employee who "appears to be a potential subject of disciplinary action" is entitled to representation "at the time of questioning," i.e., even before being charged. Plainly, the legislature regarded an investigation as part and parcel of a disciplinary proceeding, and the distinction drawn by the majority has no statutory basis. A few more points deserve to be made concerning the CCRB's attempt to circumvent the disciplinary statute of limitations enacted by the legislature. First, the "informal" disciplinary measures (such as "behavior correction or training") that the CCRB proposes to recommend for noncriminal misconduct that occurred more than 18 months before the filing of the complaint would still constitute discipline and, as such, are barred by Civil Service Law § 75(4). Further, as the Police Department noted in objecting to revised § 1-15(a), the mere presence of a late complaint on his or her record would "unduly stigmatize" a police officer, as it could impact future promotions and transfers. In enacting Civil Service Law § 75(4), the legislature, after balancing the competing interests, determined that such adverse consequences are appropriate only where an officer has been confronted with the charges within the statutorily defined limitations period. The majority essentially rewrites Civil Service Law § 75(4) when it asserts that it would not violate the statute of limitations for the CCRB to recommend that an officer undergo what it calls "instructions or training" — and suffer the negative consequences that will inevitably ensue therefrom — based on conduct that occurred more than 18 months before the filing of the complaint.
I further note that, in authorizing the CCRB to investigate a late complaint of any kind of alleged misconduct, revised § 1-15(a) deprives police officers of the certainty and repose with which the Legislature intended to provide them by enacting the disciplinary statute of limitations. There is no basis for singling out New York City police officers, among all the government employees covered by the Civil Service Law, to deprive them of this benefit.
Finally, I believe that we should modify the order appealed from to invalidate the final sentence of revised § 1-44 of the CCRB Rules. This new provision grants the CCRB an entirely new power to take "note[]" in its case dispositions of "possible misconduct falling outside its jurisdiction" and of "the evidence of such misconduct." In this regard, it should be borne in mind that the CCRB's jurisdiction under the City Charter is limited to misconduct falling within the categories of "excessive use of force, abuse of authority, discourtesy, or use of offensive language" (NY City Charter § 440 [c][1]), colloquially known as "FADO" misconduct. The previous version of § 1-44 tracked an April 2012 memorandum of understanding between the CCRB and the Police Department by requiring the CCRB, upon "becom[ing] aware of possible misconduct falling outside its jurisdiction, such as the making of a false statement by an officer, . . . not itself [to] prosecute such possible misconduct but . . . instead [to] immediately refer such possible misconduct to the Police Department for investigation and possible prosecution by the Police Department." Revised § 1-44, while retaining the language just quoted, turns the meaning of the rule on its head by adding the following new concluding sentence: "Other misconduct will be noted in case dispositions by categories describing the possible misconduct and the evidence of such misconduct."[FN3]
In my view, the amendment of § 1-44 to empower the CCRB to take "note[]" in its case dispositions of possible non-FADO misconduct, and of the evidence of such misconduct, essentially directs the CCRB to make findings concerning misconduct outside its jurisdiction under the City Charter. The majority resists this conclusion by pointing to the new sentence's reference to "possible misconduct" (emphasis added). No doubt the word "possible" was inserted into the amendment as a fig leaf to achieve just this result, but I see no practical difference, in terms of impact upon an accused police officer, between a finding by the CCRB of "misconduct" and a finding by the CCRB of "possible misconduct." In either case, the finding becomes part of the officer's permanent record and will affect the future course of his or her career, whatever the commissioner's ultimate disposition of the matter might be. Further, there is no need for including a finding of "possible [non-FADO] misconduct" in a case disposition by the CCRB, since the CCRB can refer to the Police Department instances of possible non-FADO misconduct of which it becomes aware (and, indeed, is directed to do so "immediately") without making any such formal finding in the final case disposition. In sum, revised § 1-44, to the extent it purports to empower the CCRB to make findings concerning police misconduct outside its FADO jurisdiction (whether "possible" or actual), should be invalidated.
For the foregoing reasons, I would modify the order appealed from to invalidate revised § 1-15(a) of the CCRB rules and to invalidate the final sentence of revised § 1-44 of the CCRB Rules. To the extent the majority does otherwise, I respectfully dissent. In all other respects, I concur with the majority's disposition of the appeal and cross appeal.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 28, 2020
CLERK



Footnotes

Footnote 1:Revised § 1-15(a) provides in full: "When a complaint is filed with the Board after the 18-month statute of limitations has expired pursuant to Civil Service Law § 75(4), the Chair in consultation with the Executive Director will determine whether to investigate the complaint."

Footnote 2:And, to reiterate, the CCRB makes plain that it has no intention of abiding by any such limitation in practice.

Footnote 3:In its entirety, revised § 1-44 provides as follows, with changes from the previous version indicated by underlining of new material and bracketing of deleted material:
"§ 1-44 Other Misconduct.
"If during the course of a Prosecution the [CCRB] Civilian Complaint Review Board becomes aware of possible misconduct falling outside its jurisdiction, such as the making of a false statement by an officer, the Board shall not itself prosecute such possible misconduct but shall instead immediately refer such possible misconduct to the Police Department for investigation and possible prosecution by the Police Department. The [CCRB shall] Civilian Complaint Review Board will provide to the Police Department such assistance as may be requested, in the investigation or [p]Prosecution by the Police Department of such possible misconduct and shall, if necessary, coordinate its Prosecution with that of the Police Department. Other misconduct will be noted in case dispositions by categories describing the possible misconduct and the evidence of such misconduct."